**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>　Corporate Resource Services, Inc., *et al.*,<br><br>　　　　　　　　　　　　　　　Debtors. | **FOR PUBLICATION**<br><br>Case No. 15-12329 (MG)<br><br>(Jointly Administered) |
| James S. Feltman, not individually but solely in his capacity as Chapter 11 Trustee of the Estate of Corporate Resource Services, Inc., *et al*,<br>　　　　　　　　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>Noor Staffing Group, LLC, *et al*.,<br><br>　　　　　　　　　　　　　　　Defendants. | Adv. Pro. Case No. 16-01037 (MG) |

**MEMORANDUM OPINION AND ORDER STRIKING DEFENDANTS'**
**DEFENSE UNDER BANKRUPTCY CODE § 553**

*A P P E A R A N C E S:*

TOGUT, SEGAL & SEGAL LLP
*Attorneys to James S. Feltman, not individually*
*but solely in his capacity as Chapter 11 Trustee of Corporate Resource*
*Services, Inc., et al.*
One Penn Plaza, Suite 3335
New York, New York 10119
By:　Steven S. Flores, Esq.
　　　Lauren L. Peacock, Esq.
　　　Minta J. Nester, Esq.


GRIFFIN HAMERSKY LLP
*Attorneys for Noor Staffing Group, LLC and Noor Associates, Inc.*
420 Lexington Avenue, Suite 400
New York, New York 10170
By:　Scott A. Griffin, Esq.
　　　Michael D. Hamersky, Esq.
　　　David M. Smith, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

The issue before the Court is whether the defendants may assert a right of setoff under Bankruptcy Code section 553 for admittedly contingent claims. The defendants assert setoff as a defense in this adversary proceeding; they also assert a right to set off against any judgment entered against them in this adversary proceeding the amount of any of their contingent claims allowed in the claims allowance process. The parties have fully briefed the issue[1] and both sides now urge the Court to resolve it since it may substantially affect the course of this case. For the reasons explained below, the Court grants the plaintiff's motion to strike the setoff defense and to disallow the claim to the extent it seeks setoff for contingent claims. The defendants' proof of claim for contingent general unsecured claims survives, at least for now, subject to a subsequent claim objection.

## I.    BACKGROUND

James S. Feltman, as chapter 11 trustee (the "Trustee") of the debtors,[2] including Corporate Resource Services, Inc. ("CRS"), has moved to strike the setoff defense of defendants Noor Staffing Group, LLC and Noor Associates, Inc. (together with Noor Staffing Group, LLC, "Noor") and the separately filed setoff proof of claim. The Trustee argues that setoff fails as a matter of law to

---

[1] *See Trustee's Memorandum of Law on Invalidity of Noor's Setoff Defense and Claims Under Section 553 of the Bankruptcy Code* (ECF Doc. # 80); *Declaration of Minta J. Nester, Esq. in Support of Trustee's Memorandum of Law on Invalidity of Noor's Setoff Defense and Claims Under Section 553 of the Bankruptcy Code* (ECF Doc. # 81); *Noor Staffing Group, LLC and Noor Associates, Inc.'s Memorandum of Points and Authorites in Support of Right to Setoff Claims Against Debtor Pursuant to Section 553 of the Bankruptcy Code* (ECF Doc. # 82); *Declaration of Michael D. Hamersky in Support of Noor Staffing Group, LLC and Noor Associates, Inc.'s Memorandum of Points and Authorities in Support of Right to Setoff Claims Against Debtor Pursuant to Section 553 of the Bankrutpcy Code* (ECF Doc. # 83).

[2] The debtors in these chapter 11 cases are: (1) Corporate Resource Services, Inc.; (2) Accountabilities, Inc.; (3) Corporate Resource Development Inc.; (4) Diamond Staffing Services, Inc.; (5) Insurance Overload Services, Inc.; (6) Integrated Consulting Services, Inc.; (7) The CRS Group, Inc.; and (8) TS Staffing Services, Inc. (collectively, the "Debtors").

the extent that Noor seeks to set off contingent claims. The issue is important to Noor and to other unsecured creditors because to the extent Noor may set off its claims against CRS's claims, Noor receives a dollar-for-dollar reduction of any liability it is determined to have to CRS.[3] The effect of setoff is to elevate an otherwise unsecured claim—unlikely to receive a substantial recovery in the cases of these hopelessly insolvent debtors—to secured claim status, further diminishing the recoveries of any other general unsecured creditors.

The Trustee's claims against Noor, asserted in the adversary complaint, and Noor's defenses, arise out of CRS's sale to Noor of substantially all of CRS's assets (the "Purchased Assets") that closed on February 27, 2015. The sale was pursuant to an Asset Purchase Agreement (the "APA") governed by New York law.[4] Noor agreed to a purchase price (the "Purchase Price") of: (i) $1,000,000 reduced by CRS's $95,761.07 real estate tax liability; (ii) 80% of the acquired accounts receivable; (iii) $2,000,000 in 40 equal monthly cash installments beginning in July 2015; and (iv) $500,000 minus a purchase price reduction of up to $360,000, payable on November 1, 2018. To date, Noor contends that it has paid CRS an aggregate of approximately $7,250,000 in connection with the Purchase Price. The adversary complaint alleges that Noor has failed to pay substantial amounts due to CRS under the APA. It also alleges that Noor has collected, diverted to itself, and refused to turn over to the Trustee, certain account receivables not sold to Noor, which therefore remain property of the estates. The

---

[3] Noor's defense that a material breach of the contract by CRS partially or wholly excuses Noor's performance in failing to pay remaining amounts due under the APA is unaffected by the results of this decision. *Noor Staffing, LLC's and Noor Associates, Inc.'s Amended Answer and Counterclaims* ¶ 59 (ECF Doc. # 52). *See* RESTATEMENT (SECOND) OF CONTRACTS § 237 (1981) ("Except as stated in § 240, it is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time.").

[4] The parties do not dispute that, to the extent state law governs, New York law governs.

3

Trustee contends that Noor's self-help in collecting and holding CRS's property—purportedly as a setoff—violates the automatic stay.

On July 23, 2015, CRS and certain of its affiliated Debtors commenced cases under chapter 11 of the Bankruptcy Code. On September 22, 2015, James S. Feltman was appointed as the Trustee for the Debtors. Some of the facts surrounding the filing are unclear, but it is undisputed that the Debtors collected from their customers amounts due to governmental tax collectors for employee tax withholding. Further, it is undisputed that CRS failed to pay to the IRS and state tax authorities well over $100 million of employee withholding taxes. Almost certainly, CRS is hopelessly insolvent, but whoever may be liable for these unpaid taxes has still not been determined. Obviously, as successor to substantially all of CRS's assets, Noor is concerned that claims for unpaid taxes (or other amounts) may be asserted against it, but this has not happened so far.

On March 4, 2016, the Trustee commenced this adversary proceeding against Noor, alleging, among other causes of action, turnover, breach of contract, and avoidance of the sale of the Purchased Assets as a constructive fraudulent transfer under section 548 of the Bankruptcy Code (the "Complaint"). On August 19, 2016, Noor filed its amended answer to the Complaint.

On September 2, 2016, the Trustee filed the *Motion to Dismiss Noor's Amended Counterclaims and Strike Noor's Affirmative Defenses and Recanted Admissions* (the "Motion to Dismiss," ECF Doc. # 60.) Noor opposed the Motion to Dismiss. At a subsequent hearing on October 13, 2016, the Court, *inter alia*: (i) found that Noor's breach of contract and misrepresentation claims had to be asserted in a proof of claim; (ii) denied the Trustee's motion to dismiss Noor's unclean hands and *in pari delicto* defenses; and (iii) reserved ruling

4

on Noor's setoff and collateral source defenses. That same day, Noor filed its proof of claim asserting, among other things, breach of contract, fraudulent inducement, and misrepresentation against CRS. Noor's Proof of Claim seeks: (i) $135,419.56 in fixed damages (the "Fixed Claims"); (ii) $8,478,516.16 in contingent damages (the "Contingent Claims"); and (iii) unliquidated damages in a yet to be determined amount.

Noor's amended proof of claim, filed on December 23, 2016, contends that Noor is entitled to recover approximately $8.4 million in "Contingent Liability Damages." Noor categorizes potential damages that Noor believes *may* be incurred *in the future* to government entities or customers, none of which have even been asserted so far. These categories are:

(i)   CRS's Pre-Transaction U.S. Immigration Law Violations;
(ii)  CRS's Pre-Transaction New York State Labor Law Violations;
(iii) CRS's Pre-Transaction Violations of DOE Contract and Medicaid Regulations; and
(iv)  CRS's Pre-Transaction Federal and State Tax Liabilities

The focus of the Trustee's current motion is on the Contingent Claims. As explained below, New York law does not permit setoff of contingent claims; Noor does not dispute this legal rule. The dispute here is whether applicable bankruptcy law creates a party's right to set off contingent claims, independent of New York law. Put another way, the issue is whether anything in the Bankruptcy Code *creates* a right of setoff not available under state law.[5] Noor says yes; the Trustee says no. As explained below, the Court concludes that the Trustee is correct and that Section 553 of the Bankruptcy Code merely *preserves* the right of setoff.

The Trustee also argues that even if setoff of contingent claims is permissible, Noor cannot meet the additional requirements of section 553. The Trustee argues that:

---

[5] Noor does not contend that any other nonbankruptcy federal law creates a right to setoff applicable in this adversary proceeding.

5

> even if there was a preexisting right to setoff under New York law for contingent claims (there is not), Noor cannot meet the additional requirements of § 553. Although bankruptcy law allows contingent claims generally, a claim for setoff of a prepetition debt—which allows a dollar for dollar recovery—only arises when *all transactions* upon which the liability is premised occurred *before* the petition date. Here, the transactions necessary to establish liability still have not come to pass 18 months after the petition date and two years after the Transaction closed."

(Trustee's Memorandum of Law at 3 (emphasis in original).)

The starting point for the analysis is whether New York law permits setoff of contingent claims; it does not. The analysis then shifts to whether the Bankruptcy Code creates a right to set off contingent claims; it does not.

## II.    DISCUSSION

### A.    New York Law Does Not Allow Setoff of Contingent Claims

Section 151 of the New York Debtor and Creditor Law ("DCL") codifies New York's equitable and common law right to setoff. It provides that a debtor has the right "to setoff and apply against any indebtedness, whether matured or unmatured" any amount owing from the debtor to the creditor. N.Y. Debt. & Cred. Law § 151; *see Thai Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic*, 2016 WL 958640, at *2–3 (S.D.N.Y. Mar. 8, 2016) (discussing section 151 of the DCL and its broad applicability). Neither section 151 of the DCL nor its equitable roots allow setoff of contingent claims. *See, e.g., Dunn v. Uvalde Asphalt Paving Co.*, 175 N.Y. 214, 219 (1903) (holding that "there can be no such thing as a right to setoff a possible but unestablished liability, unliquidated in amount, against a liquidated legal claim that is due and payable"); *Thai Lao*, 2016 WL 958640, at *3 n.3 ("Both New York state courts and courts in this Circuit are in agreement that DCL § 151 does not authorize the setoff of a contingent obligation."); *Scherling v. Hellman Elec. Corp.* (*In re Westchester Structures, Inc.*), 181 B.R. 730, 740 (Bankr. S.D.N.Y. 1995) ("[Under section 151 of the DCL,] the debts to be

6

offset can be matured or unmatured but they cannot be contingent.") (internal citation omitted). A claim is contingent and ineligible to be set off under New York law when it is dependent on some future event that may never happen or has not yet accrued. *See, e.g., Trojan Hardware Co. v. Bonarquisti Constr. Corp.,* 141 A.D.2d 278, 282 (3d Dep't 2010) ("We do not believe that the term indebtedness in [DCL] § 151 should be expanded to encompass such a contingent situation."); *Spodek v. Park Prop. Dev. Assocs.,* 263 A.D.2d 478, 478–79 (2d Dep't 1999) ("[T]here is no right to setoff a possible, unliquidated liability against a liquidated claim that is due and payable.") (internal citations omitted); *see also Westchester*, 181 B.R. at 740 ("A contingent liability, however, is measured by uncertainty as to whether any obligation will ever arise.") (internal citation omitted).

Even when a lawsuit has been filed, claims that are not finally adjudicated are contingent. *See Cytec Indus., Inc. v. Allnex (Luxembourg) & Cy S.C.A.*, 2015 WL 3762592, at *13 (S.D.N.Y. May 15, 2015) ("Courts have declined to permit offsets directed toward damages in a pending litigation."); *see, e.g., Hack v. Stang*, 2015 WL 5139128, at *5 (S.D.N.Y. Sept. 1, 2015) (finding that creditor's pending litigation "in New Jersey is, at best, a potential unliquidated liability that, as a matter of law, may not be used as a setoff") (internal citation omitted); *Correspondent Servs. Corp. v. J.V.W. Inv. Ltd.,* 524 F. Supp. 2d 412, 424 (S.D.N.Y. 2007) (holding that a defendant "has no right to setoff its pending disputed and unliquidated claim against [a plaintiff's] present entitlement to damages owed"). Similarly, debts that are incurred but cannot be calculated until after the petition date are also contingent. *See, e.g.*, *Willett v. Lincolnshire Mgmt,* 302 A.D.2d 271, 271 (1st Dep't 2003) (affirming dismissal of setoff affirmative defense where obligation was currently being disputed).

7

Noor does not dispute that the bulk of its claims have not yet accrued and are dependent on future events that may never occur. In other words, Noor concedes the vast majority of its claims are contingent. *See, e.g.*, *Declaration of Minta J. Nester, Esq. in Support of Trustee's Memorandum of Law on Invalidity of Noor's Setoff Defense and Claims Under Section 553 of the Bankruptcy Code* (ECF Doc. # 81), Ex. E (Claim at ¶¶ 13, 15(a)–(d), 16(c)) (describing six categories of "Contingent Liability Damages" that total approximately $8.4 million); Ex. F (Jacobson Report at ¶¶ 8, 30(b), 33–37) (discussing Noor's "Contingent Liabilities Damages" which "represent claims by Noor against the Plaintiffs [sic] related to liabilities that have not been incurred by Noor through the writing of this report, but *might be incurred in the future*") (emphasis added). There is uncertainty whether liability will ever arise—no fines have been levied; no court has found Noor responsible for CRS's alleged wrongdoing before the sale closed; and Noor has not paid any money to resolve any "contingent" liabilities.

### B.     The Bankruptcy Code Does Not Create a Right to Setoff

The Supreme Court has definitively resolved that the Bankruptcy Code does not *create* a right of setoff; section 553, with certain exceptions not relevant here, *preserves* a right to setoff created by state law or federal nonbankruptcy law. As the Supreme Court has stated:

> The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding "the absurdity of making A pay B when B owes A." Although no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy.

*Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995) (citation omitted).

*Strumpf* involved a chapter 13 bankruptcy case. The debtor was in default on a loan from the bank, and the bank's account agreement expressly provided the bank with the right of setoff.

8

Before the debtor filed the bankruptcy case,[6] the bank froze the debtor's checking account. After the bankruptcy filing, the bank refused to unfreeze the account and turn over the funds in the account to the debtor. The bank filed a motion for relief from stay under section 362(d); the debtor countered with a motion to hold the bank in contempt for violating the automatic stay. The automatic stay under section 362(a)(7) of the Bankruptcy Code bars a creditor from taking various actions, including "the setoff of any debt owing to the debtor that arose before the commencement of the case against any claim against the debtor." 11 U.S.C. § 362(a)(7). The bankruptcy court found that the account freeze violated the automatic stay and sanctioned the bank. Several weeks later, the bankruptcy court granted the bank's motion to lift the stay to permit the setoff. *See Strumpf*, 516 U.S. at 17–18.

After stating the rule that there is no federal right to setoff under the Bankruptcy Code, the Court went on to conclude that "the question whether a setoff *under § 362(a)(7) has occurred is a matter of federal law . . . ." Id.* at 19 (emphasis in original). But the right to setoff was determined by nonbankruptcy law. The Court discussed the interplay between sections 362(a)(7), 542(a) and (b), and 553.

> Section 542(b) of the Code, which concerns turnover of property to the estate, requires a bankrupt's debtors to "pay" to the trustee (or on his order) any "debt that is property of the estate and that is matured, payable on demand, or payable on order . . . *except to the*

---

[6]    Noor did not assert a right of setoff until *after* the petition was filed. "In the setoff context, timing may be of critical importance in determining the creditor's right, for example, in determining whether the creditor's debt to the debtor is pre- or postpetition in nature. As a general rule, checks deposited into the debtor's bank account are not subject to setoff until they have 'cleared.' Thus, if a debtor deposits funds into his or her account the day before the commencement of the case, but the funds do not clear until the day after, the bank's debt may be postpetition in nature and therefore not subject to setoff against the bank's prepetition claim. In general, the burden of proof rests on the creditor asserting the right of setoff to establish the relevant timing issues. Similarly, timing may be highly relevant with respect to any alleged violation of the automatic stay. A setoff that occurred three hours before the debtor's filing of the bankruptcy petition was determined to be a prepetition setoff and therefore not subject to the stay. In addition, timing may be relevant under the avoidance provisions of section 553(b)." 5 COLLIER ON BANKRUPTCY ¶ 553.05 (16th ed. rev. 2016). This Court need not address whether Noor properly timed its right of setoff, because, no such right ever existed.

9

> *extent that such debt may be offset under section 553 of this title against a claim against the debtor.*" 11 U.S.C. § 542(b) (emphasis added). Section 553(a), in turn, sets forth a general rule, with certain exceptions, that any right of setoff that a creditor possessed prior to the debtor's filing for bankruptcy is not affected by the Bankruptcy Code. It would be an odd construction of § 362(a)(7) that required a creditor with a right of setoff to do immediately that which § 542(b) specifically excuses it from doing as a general matter: pay a claim to which a defense of setoff applies.

*Id.* at 20 (emphasis in original); *see also United States v. Whiting Pools, Inc.*, 462 U.S. 198, 206–07 (1983) ("In effect, § 542(a) grants to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of the reorganization proceedings.").[7]

*Strumpf* is not alone in stating this very clear rule that the Bankruptcy Code does not create a right of setoff. *See In re Bennett Funding Grp., Inc.*, 146 F.3d 136, 138–39 (2d Cir. 1998) ("Section 553(a) of Title 11 of the United States Code does not create a right of setoff, but rather preserves whatever right exists under applicable non-bankruptcy law.") (footnote omitted); *Bank of Am. v. Lehman Bros. Holdings Inc.* (*In re Lehman Bros. Holdings Inc.*) (*Lehman I*), 439 B.R. 811, 823 (Bankr. S.D.N.Y. 2010) ("Section 553 of the Bankruptcy Code does not provide for an independent right of setoff[.]"); *In re Delta Air Lines,* 341 B.R. 439, 443 (Bankr. S.D.N.Y. 2006) ("Section 553 does not create a federal right of setoff, nor does it enhance, diminish or otherwise modify any state law right of setoff."); *In re McLean Indus., Inc.*, 90 B.R. 614, 618 (Bankr. S.D.N.Y. 1988) ("Section 553 is, however, not an independent source of a right to setoff; rather, it recognizes and preserves, but does not define, the common law right of setoff under nonbankruptcy law. A creditor seeking to setoff a debt under Title 11, therefore, must establish a claim and a right to setoff by applying the law of the state where the operative facts occurred . . .

---

[7] A creditor with a right to setoff is entitled to adequate protection before it turns over funds it holds that are subject to setoff.

10

. Section 553, moreover, does not expand nonbankruptcy rights and clearly provides that the automatic stay provisions of section 362 limit post-petition setoff rights, requiring creditors to obtain court permission before taking any action against the property of the estate.") (internal citations omitted).

In order to establish a right to setoff under section 553, a creditor must first demonstrate a preexisting right of setoff under nonbankruptcy or state law.[8] *See In re WL Homes LLC*, 471 B.R. 349, 352 (Bankr. D. Del. 2012) (stating that creditor must "first establish its right to setoff by finding an independent right of setoff under non-bankruptcy law"); *Charles Russell, LLP v. HSBC Bank USA, N.A.* (*In re Awal Bank, BSC*), 455 B.R. 73, 87 (Bankr. S.D.N.Y. 2011) ("[Section] 553 requires the court to analyze the applicable nonbankruptcy law before dealing with a set-off[.]"); *Lehman I*, 439 B.R. at 823 (noting that section 553 incorporates any preexisting setoff right that may exist under state law); *see also* 5 COLLIER ON BANKRUPTCY ¶ 553.04 (16th ed. rev. 2013) ("Section 553 of the Bankruptcy Code does not create any setoff right; it merely preserves certain rights of setoff that exist *under nonbankruptcy law*.") (emphasis added) (footnote omitted).

The creditor asserting the right to setoff has the burden to establish that the right to setoff exists. *See Geron v. Schulman* (*In re Manshul Constr. Corp.*), 2000 WL 1228866, at *56 (S.D.N.Y. Aug. 30, 2000); *McLean Indus., Inc.*, 90 B.R. at 618 ("The burden of proof, moreover, squarely rests with [the creditor] in demonstrating its entitlement to setoff in light of the facts of this case.") (citing *Pester Refining Co. v. Mapco Gas Prods., Inc.*, 845 F.2d 1476, 1486 (8th Cir. 1988) (stating that burden is on creditors to establish valid rights of setoff)). *See also Glob.*

---

[8] "Federal rights of setoff exist principally to provide the government, as a creditor, with the ability to offset mutual debts owing between the government and others." 5 COLLIER ON BANKRUPTCY ¶ 553.04[3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2016).

11

*Cable, Inc. v. Adelphia Commc'ns Corp.* (*In re Adelphia Commc'ns Corp.*), 2006 WL 1559437, at *4 (S.D.N.Y. June 7, 2006).

As already explained, New York law does not recognize a right of setoff for contingent claims. Section 542(b) of the Code requires Noor to turn over CRS's property to the Trustee. Section 553 provides no exception to this requirement in the absence of a nonbankruptcy law right of setoff. To permit Noor to retain CRS's property and to claim a right to setoff when no such right arises from New York law would have the effect of elevating its unsecured claim (if any) to secured status. *See* 11 U.S.C. § 506(a)(1) ("An allowed claim of a creditor . . . that is subject to setoff under section 553 of this title, is a secured claim to the extent of . . . the amount subject to setoff . . . ."); 4 COLLIER ON BANKRUPTCY ¶ 506.03[1][b] (16th ed. rev. 2009) ("In general, section 506(a) provides that the existence of a right of setoff under nonbankruptcy law establishes the existence of a secured claim for purposes of the section if the setoff right under nonbankruptcy law is preserved in section 553 of the Code.").

Noor improperly relies on *McCollum v. Hamilton National Bank of Chattanooga*, 303 U.S. 245 (1938), for the proposition that there is a federal right of setoff. The Court in *McCollum*, interpreting the old Bankruptcy Act and 12 U.S.C. § 85, had to determine whether there was a right of setoff for a penalty imposed on a bank by a federal statute for knowingly receiving illegal interest. After the bank's borrower filed a bankruptcy case, the debtor's trustee brought an action in state court against the bank to recover the penalty. The bank sought to set off the penalty against the debtor's debt to the bank. The state supreme court held that setoff was permissible under section 68a of the Chandler Act of 1938. The Supreme Court reversed, addressing the "question whether [the bank] is entitled to have the amount of the judgment for penalty credited on its claim against the bankrupt estate." *Id.* at 247. The Court determined that

12

setoff of the liability created by the federal penalty statute depended on the right to setoff under section 68a, which provided that, "[i]n all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be setoff against the other, and the balance only shall be allowed or paid." *Id.* at 248. Because liability for the penalty "is laid *in invitum* as a disciplinary measure . . . , [it] may be enforced only in a suit brought exclusively for that purpose . . . [and] the payment of any debt owed by the plaintiff to the bank may not be held a condition precedent to the determination of that issue." *Id.* at 249. Therefore, setoff could not apply. Nothing in *McCollum* suggests that there was a federal right of setoff; rather, whatever state law may have provided, the bank's liability under the federal penalty statute was not a mutual debt that was subject to setoff.

Furthermore, the language of section 68a was changed when the Bankruptcy Code was adopted. Section 553(a) now provides that:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that— . . . .

11 U.S.C. § 553(a). The Supreme Court in *Strumpf* read the language of this section together with other sections of the Bankruptcy Code. It found no ambiguity—the Bankruptcy Code does not create a federal right to setoff.

Noor also relies on *In re Chestnut Co., Inc.*, 39 B.R. 519 (Bankr. D.S.C. 1984), decided 11 years before the Supreme Court's decision in *Strumpf*. The court stated that "[the] right of setoff does not depend upon local or state law, but upon the terms of § 553 of the Bankruptcy Code." *Id.* at 521. The right to *apply* setoff in bankruptcy most certainly depends on bankruptcy law—section 553 preserves the right to setoff available under applicable nonbankruptcy law, but

13

section 553 *adds three conditions* in subsections 553(a)(1), (2) and (3) to applying setoff in bankruptcy. The court in *Chestnut* went on to say that "[h]owever, the nature, existence, and enforceability of claims sought to be set off are to be determined by applying the law of the state where the operative facts occurred." *Id.* at 521. So long as that statement is understood to mean that applicable state law determines whether state law permits setoff of the particular state law claim, the statement is unremarkable. If the court intended something more—for example, Noor's argument that the Bankruptcy Code creates a federal right to set off any claim enforceable under state law (even if state law would not permit setoff of the claim)—such a ruling cannot be reconciled with the Supreme Court's later decision in *Strumpf*.

Noor also relies on *Elsinore Shore Assocs. v. First Fidelity Bank*, 67 B.R. 926 (Bankr. D.N.J. 1986), another decision that precedes *Strumpf*. The relevant language in *Elsinore* states that "Courts may look to state law in order to determine whether a setoff has occurred . . . , however, the *granting or denial of the right to a* setoff depends wholly upon the terms of § 553, and not upon the terms of state laws or statutes." *Id.* at 942 (emphasis added). Noor selectively omits a part of the sentence—the italicized words "granting or denial of the right to a . . . "— which, if read in its entirety, no longer supports Noor's assertion. Granting or denial of setoff is up to the judge's discretion, but the setoff right must exist beforehand (*i.e.,* allowed by state law or nonbankruptcy law, and hence preserved in bankruptcy by section 553). If there is no right of setoff under nonbankruptcy law, there is nothing for the judge to grant or deny.

Finally, Noor relies on *In re Comm'n Dynamics, Inc.*, 382 B.R. 219, 232 (Bankr. D. Del. 2008), a case that is distinguishable from this case. The issue in *Communication Dynamics* was whether a rejection damages claims should be considered a prepetition claim or a post-petition claim. In order to be eligible for setoff, it was necessary to construe the claim as prepetition. *Id.*

14

at 231–32.  The court held that "for purposes of section 553, a rejection damages claim is a pre-petition claim subject to setoff against any pre-petition debt owed by the creditor to the debtor."[9] *Id*. at 232.  That holding, of course, does not conflict with *Strumpf*.

*Communication Dynamics* does provide some support for the premise of Noor's argument—namely, the court appears to accept the argument that section 553 is ambiguous and should not be read as preventing setoff of a claim arising under another section of the Bankruptcy Code—in that case, under section 365(g) for rejection damages.  The supposed ambiguity is that section 553 speaks only of not affecting a right to setoff—"this title does not affect any right of a creditor to offset a mutual debt . . . that arose before the commencement of the case," 11 U.S.C. § 553(a)—without identifying the sources for setoff rights.

*Communication Dynamics* did not hold that there is a federal right to set off contingent state law claims, as Noor urges.  The court cited an article that proposed that contingent claims should be entitled to setoff regardless of state law because of what it perceived as an ambiguity in section 553 of the Bankruptcy Code.  *See id.* at 232; Daniel W. Linna, Jr., *Contract Rejection Damages May Not Be Eligible For Setoff After All, Says Delta Court,* AM. BANKR. INST. J., Sept. 25, 2006, at 53.  The premise of the argument that setoff of contingent claims is permissible is that section 101(5) of the Bankruptcy Code defines "claim" broadly to include a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, *contingent*, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C. § 101(5)(A) (emphasis added).  Why, then, in light of the broad definition in section 101(5), should contingent claims be excluded from setoff, even if state law does not

---

[9] *But see In re Delta Air Lines, Inc.,* 341 B.R. 439, 448 (Bankr. S.D.N.Y. 2006) (concluding that rejection damages claims are *not* prepetition claims for purposes of setoff).  The Delaware court in *Communication Dynamics*, in reaching the opposite result, declined to follow the New York *Delta* court.

15

permit setoff? The answer here is that while Noor may have a claim against CRS under section 101(5), it does not mean that such a claim entitles Noor to setoff under section 553 where state law would not permit setoff. Section 553 does not extend the right to setoff to any "claim" falling within the definition in section 101(5).

*Communication Dynamics* does *not* discuss *Strumpf* or the numerous other cases that make clear that setoff is only available to the extent that the right of setoff is available under nonbankruptcy law. Sections 101(5) and 553 should *not* be read together to create a federal right of setoff for contingent state law claims, unless setoff of such contingent claims is permissible under applicable nonbankruptcy law. As already explained, the effect of doing so would be to elevate unsecured claims to secured status to the disadvantage of all other unsecured creditors, a result contrary to the Code's policy promoting a distribution to unsecured creditors *in pari passu*. Absent a clear indication that Congress intended that result, the Court cannot read the Code as commanding a result that *Strumpf* and the many cases that follow it reject. As explained below, the broad language of section 101(5) does mean that Noor's contingent claim should not be disallowed at this stage of the case (other than to deny the ability to set off the claim).

    **C.**    **Noor Has Not Satisfied the Other Requirements of Section 553**

        *1.*    *Section 553 Requires Finality*

After a creditor has established a right to setoff under applicable state law, the creditor must then make an additional showing that mutual debts "arose before the commencement of the [bankruptcy] case[.]" 11 U.S.C. § 553; *see also Lehman I*, 439 B.R. at 823.

"[F]or setoff purposes [under section 553], a claim—even a contingent one—arises when 'all transactions necessary for liability occur.'" *WL Homes LLC*, 471 B.R. at 352) (citing *United States v. Gerth,* 991 F.2d 1428, 1433 (8th Cir. 1993)); *In re Lehman Bros. Holdings Inc.* (*Lehman II),* 404 B.R. 752, 759–60 (Bankr. S.D.N.Y. 2009) (finding all transactions giving rise

16

to liability had not arisen before the filing of the bankruptcy petition in disallowing setoff under section 553); s*ee also Adelphia,* 2006 WL 1559437, at \*4 ("The Bankruptcy Court's denial of setoff was based in part on the disputed and indefinite nature of the liability from the debtor to the creditor. . . . Because it was Global's [the party asserting setoff] burden to prove a symmetry or reciprocity of obligation in order to meet the mutuality requirement for setoff . . . Global has not satisfied this requirement for establishing a right to setoff under Section 553(a)."). Setoff "is permitted when, at the time the bankruptcy petition is filed, the *debt is absolutely owing* but is not presently due, or when a *definite liability has accrued* but is not yet liquidated." *In re Young,* 144 B.R. 45, 46–47 (Bankr. N.D. Tex. 1992) (emphasis added) (concluding that setoff was not permitted where the liability did not arise until a postpetition act by Congress); *see also Delta*, 341 B.R. at 450 (finding that contractual "[c]redits are a function of a calculation that cannot be made before the close of the [fiscal year] and therefore [a claim to set them off] cannot exist or 'arise' before close of the [fiscal year]."); *Trace*, 284 B.R. at 38–40 (finding unmatured nature of the creditor's claim was not fully owing and therefore could not be used for setoff under section 553).

      *2. Noor's Claim Does Not Relate Back to the Signing of the APA*

  Noor argues that the violation of the APA relates back to the time of its execution, and, therefore, its claim arose before the commencement of these cases and is therefore eligible for setoff. The law does not support this argument. As the Trustee correctly argues, to effectuate setoff, Noor must show that "all transactions necessary for liability [have] occur[ed]." *See Lehman II*, 404 B.R. at 759; *WL Homes*, 471 B.R. at 352. Only Noor's alleged Fixed Claims can meet this test.

  Noor's reliance on *Communications Dynamics* in support of its relation-back argument is misplaced. The debtor in that case rejected a contract, triggering a rejection damages claim

17

under section 365(g). 382 B.R. at 233–34. Because the contract was rejected, there was no issue whether the claim was contingent. Here, the events triggering liability have not, and may not, take place.

### D. Noor's General Unsecured Claim Survives

The Trustee's motion requests that Noor's general unsecured claim should be disallowed and expunged. Section 101(5)(A) includes within its permissible scope claims that are "contingent." Noor's claim fairly falls into that category. *See* 2 COLLIER ON BANKRUPTCY ¶ 101.05[1] (16th ed. rev. 2011) ("Neither the contingency of the debt nor the immaturity of the obligation affects whether a right to payment is a claim.") (collecting cases). The contingent claim (whether asserted as a defense to the adversary proceeding or as a stand-alone claim as part of the claims allowance process) may not be used to set off against the Trustee's claims against Noor, but Noor is entitled to proceed with its claim. The Trustee may object to the claim, and it may be subject to estimation under section 502(c)(1), but it is premature for the Court to rule on those issues. Given that these Debtors appear to be hopelessly insolvent, the likelihood of any substantial recovery on unsecured claims is remote.

### III.    CONCLUSION

For the reasons explained above, Noor may not set off its contingent claims, either as a defense in the adversary proceeding or as a claim against these estates. Therefore, the Trustee's motion to strike the setoff defense, and the related claim to the extent it seeks setoff for contingent claims, is **GRANTED.**

**IT IS SO ORDERED.**

Dated:    March 1, 2017
          New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge